UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| Consumer Financial Protection Bureau, | |
| Plaintiff, | Case No. 1:15-cv-14024 **RGS** |
| v. | **STIPULATED FINAL JUDGMENT AND ORDER** |
| Collecto, Inc. d/b/a EOS CCA, | |
| Defendant. | |

The Consumer Financial Protection Bureau (Bureau) commenced this civil action on December 7, 2015 to obtain consumer redress, injunctive relief, civil penalties, and other relief, from Collecto, Inc. d/b/a EOS CCA (EOS). The Complaint alleges violations of §§ 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531(a), 5536(a)(1), violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2, and violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e, in connection with EOS's reporting and collecting of certain debts.

The parties, by and through respective counsel, have requested the Court to enter this Stipulated Final Judgment and Order (Order) to resolve all matters in

1



dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

## FINDINGS AND CONCLUSIONS

1.    This Court has jurisdiction over the parties and the subject matter of this action.

2.    The Parties agree to entry of this Order, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

3.    EOS neither admits nor denies any allegations in the Complaint, except as specifically stated in this Order. For the purposes of this Order, EOS admits the facts necessary to establish the Court's jurisdiction over it and the subject matter of this action.

4.    EOS waives service under Rule 4(d) of the Federal Rules of Civil Procedure and waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order. EOS also waives any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party will bear its own costs and expenses, including, without limitation, attorneys' fees.

5.    Entry of this Order is in the public interest.

## DEFINITIONS

The following definitions apply to this Order:

6.      "AT&T Portfolio" means the portfolio of defaulted accounts purchased by US Asset Management (USAM), EOS's wholly owned subsidiary, from AT&T in August 2012.

7.      "AT&T Portfolio Debt" means an individual account included in the AT&T Portfolio.

8.      "Board" means EOS's duly-elected and acting U.S. Board of Directors.

9.      "Charge-off" means the treatment of a receivable balance by a Creditor as a loss or expense because payment is unlikely.

10.      "Charge-off Balance" means the amount alleged due on an account receivable at the time of Charge-off.

11.      "Creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but not a person who receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

12.      "Disputed Portfolio Debt" means any AT&T Portfolio Debt whose accuracy or validity was disputed by a consumer, either orally or in writing, to EOS, its agents or assigns, USAM or a consumer reporting agency.

13. "Effective Date" means the date on which the Order is entered on the docket.

14. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegee.

15. "EOS" or "Defendant" means Collecto, Inc. d/b/a EOS CCA and its successors and assigns.

16. "Original Account-Level Documentation" means

    a.    any documentation that a creditor or its agent (such as a servicer) provided to a consumer about a debt; or

    b.    the complete transactional history of a debt, created by a creditor or its agent (such as a servicer); or

    c.    a copy of a judgment, awarded to a creditor or entered on or before the Effective Date.

17. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against EOS based on substantially the same facts as alleged in the Complaint.

18.    "Restitution Eligible Consumers" means any consumer who paid a

Disputed Portfolio Debt that EOS did not substantiate with Original Account-Level

Documentation.

## ORDER

### I.
### CONDUCT PROVISIONS

**IT IS THEREFORE ORDERED** that,

19.    EOS and its officers, agents, servants, employees, and attorneys who

have actual notice of this Consent Order, whether acting directly or indirectly, may

not violate §§ 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of

2010, 12 U.S.C. §§ 5531(a), 5536(a)(1); the Fair Debt Collection Practices Act,

15 U.S.C. § 1692e; and the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a).

20.    For each Disputed Portfolio Debt that EOS has not substantiated with

Original Account-Level Documentation as of the Effective Date, within 30 days of

the Effective Date, EOS must submit a request to any consumer reporting agencies to

which EOS is reporting the Disputed Portfolio Debt to remove all related tradelines

and further is permanently enjoined from:

      a.    furnishing information about the Disputed Portfolio Debt to

           third parties, including consumer-reporting agencies;

      b.    engaging in any collection activity with respect to the Disputed

           Portfolio Debt;

      c.      accepting any payments on the Disputed Portfolio Debt; and

      d.      reselling the Disputed Portfolio Debt.

21.     EOS and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them in collecting a debt purchased by USAM, EOS, or any other EOS affiliate or subsidiary, who receive actual notice of this Consent Order, whether acting directly or indirectly, are restrained and prohibited from making any representation, expressly or by implication, that a consumer owes a debt or as to the amount of a debt owed or allegedly owed unless, at the time of making the representation, EOS can substantiate the representation. Without limiting the foregoing, for 5 years from the Effective Date, such substantiation must include reviewing Original Account-Level Documentation reflecting the consumer's name and the claimed amount, excluding any post Charge-off or post-judgment payments (unless the claimed amount is higher than the Charge-off Balance or judgment balance, in which case EOS must review (i) Original Account-Level Documentation reflecting the Charge-off Balance or judgment balance and (ii) an explanation of how the claimed amount was calculated and why such increase is authorized by the agreement creating the debt or permitted by law), under any of the following circumstances:

      a.      the consumer disputed, orally or in writing, the accuracy or validity of the debt;

6

b.      the debt was purchased, after the Effective Date, through a

purchase agreement without meaningful and effective

representations and warranties as to the accuracy or validity of the

debt;

c.      the debt was purchased, after the Effective Date, through a

purchase agreement without meaningful and effective

commitments to provide Original Account-Level Documentation

during the time period in which EOS is collecting the debt; or

d.      the debt was purchased in a portfolio which EOS knows contains

unsupportable or materially inaccurate information about any

debt, based on either of the following factors:

i       at any time during the preceding twelve months, a

Consumer disputed, orally or in writing, the accuracy or

validity of a debt in the portfolio and EOS sought but was

unable to obtain Original Account-Level Documentation

reflecting the amount of the debt or the identity of the

person responsible for the debt, unless EOS can establish,

based on a documented and thorough review of Original

Account-Level Documentation concerning other accounts

in the portfolio, that the inability to obtain Original

Account-Level Documentation to support the account in the portfolio was an anomaly; or

ii    Original Account-Level Documentation produced to EOS, by a debt seller or a consumer, reflected information about the amount of the debt or the identity of the person responsible for the debt that was inconsistent and irreconcilable with information previously provided to EOS by the debt seller, unless EOS can establish, based on a documented and thorough review of Original Account-Level Documentation concerning other accounts in the portfolio, that the production of inaccurate or inconsistent information concerning the account in the portfolio was an anomaly.

Notwithstanding the foregoing, and except as provided in Paragraph 20 of this Order, EOS is not required by this paragraph to (i) refuse to accept any payments voluntarily submitted by consumers; (ii) suspend collections for consumers who have acknowledged the debt and agreed to make payments; or (iii) refuse to communicate with a consumer who affirmatively contacts EOS (or its agents) or requests contact from EOS (or its agents) to discuss the consumer's account.

22.    For 5 years from the Effective Date, EOS and its officers, agents,

servants, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Consent Order,

whether acting directly or indirectly, are  restrained and prohibited from reselling debt

to anyone other than (i) the entity that initially sold the debt to EOS or to the

Creditor, (ii) to a subsidiary or affiliate of EOS that is subject to the terms of this

Consent Order (either by operation of law or by agreement), (iii) to any entity that is

subject to the terms of this Consent Order as part of an  acquisition or merger with

EOS, or purchase of all or substantially all of EOS's assets, or (iv) EOS's (or its

affiliates) creditors or any agent of such creditors (in each case, solely in their capacity

as such) in settlement or satisfaction of any claims under, or in connection with the

default or remedial provisions of, any relevant loan or lending agreement.

## II.
## COMPLIANCE PLAN

**IT IS FURTHER ORDERED** that:

23.    Within 60 days from the Effective Date, EOS must submit to the

Enforcement Director for review and determination of non-objection a

comprehensive compliance plan designed to ensure that EOS's debt collection, debt-

buying and credit reporting activities comply with the terms of this Consent Order

(Compliance Plan). The Compliance Plan must include, at a minimum:

      a.      detailed steps for addressing each action required by this Consent Order; and

      b.      specific timeframes and deadlines for implementation of those steps.

24.     The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct EOS to revise it. In the event that the Enforcement Director directs EOS to revise the Compliance Plan, EOS must make the revisions and resubmit the Compliance Plan to the Enforcement Director within 30 days.

25.     After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, EOS must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

26.     Notwithstanding the foregoing, EOS must take whatever steps necessary to fully implement all of the requirements and restrictions described in Paragraphs 21-22 within 60 days of the Effective Date.

### III.
### ROLE OF THE BOARD

**IT IS FURTHER ORDERED** that:

27.    The Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Consent Order before they are submitted to the Bureau.

28.    Although this Consent Order requires EOS to submit certain documents for the review or non-objection by the Enforcement Director, the Board must have the ultimate responsibility for proper and sound management of EOS and for ensuring that EOS complies with applicable Federal Consumer financial law and this Consent Order.

29.    In each instance that this Consent Order requires the Board to ensure adherence to, or undertake to perform certain obligations of EOS, the Board must:

　　　　a.    authorize whatever actions are necessary for EOS to fully comply with the Consent Order;

　　　　b.    require timely reporting by EOS's management to the Board on the status of EOS's compliance with the Consent Order; and

　　　　c.    require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

11

**IV.**
**ORDER TO PAY REDRESS**

**IT IS FURTHER ORDERED** that:

30.     Within 30 days of the Effective Date, EOS must reserve or deposit into a segregated deposit account an amount not less than $743,000 for the purpose of providing redress to Restitution Eligible Consumers under this Order. This amount represents the minimum amount of redress EOS must provide to Restitution Eligible Consumers. EOS must refund all payments made to it, directly or indirectly, by Restitution Eligible Consumers with respect to any Disputed Portfolio Debt, including any interest and fees, regardless of whether the total redress due Restitution Eligible Consumers exceeds $743,000.

31.     Within 30 days of the Effective Date, EOS must submit to the Enforcement Director for review and non-objection a comprehensive written plan for providing redress consistent with this Order (Redress Plan). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or direct EOS to revise it. If the Enforcement Director directs EOS to revise the Redress Plan, EOS must make the revisions and resubmit the Redress Plan to the Enforcement Director within 30 days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, EOS must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

32.     The Redress Plan must include (1) the form of the letter (Redress Notification Letter) to be sent notifying Restitution Eligible Consumers of the redress; and (2) the form of the envelope that will contain the Redress Notification Letter. The letter must explain how the redress amount was calculated; that the provision of refund payment is in accordance with the terms of this Order; and that the consumer will not be subject to any new debt collection or credit-reporting activities for that debt. EOS must not include in any envelope containing a Redress Notification Letter any materials other than the approved letter and redress check, unless EOS has obtained written confirmation from the Enforcement Director that the Bureau does not object to the inclusion of such additional materials.

33.     The Redress Plan must also include a description of the:

    a.     methods used to identify all Restitution Eligible Consumers;

    b.     methods used to calculate the amount of redress to be paid to each Restitution Eligible Consumer as required herein;

    c.     procedures for issuance and tracking of redress to Restitution Eligible Consumers;

    d.     procedures for monitoring compliance with the Redress Plan;

    e.     process for providing restitution for Restitution Eligible Consumers, which must include:

i       EOS mailing a check to any Restitution Eligible Consumer along with a Redress Notification Letter;

ii     EOS sending the check by United States Postal Service first-class mail, address correction service requested, to the Restitution Eligible Consumer's last address as maintained by EOS's records;

iii    EOS using best efforts to obtain a current address for any Restitution Eligible Consumer whose Redress Notification Letter and restitution check is returned for any reason, using the National Change of Address System, and promptly re-mailing all returned letters and restitution checks to current addresses. If the check for any Restitution Eligible Consumer is returned to EOS after such second mailing by EOS, or if a current mailing address cannot be identified using National Change of Address System,

EOS must retain the restitution amount of such Eligible Consumer for a period of three-hundred sixty (360) days from the date the restitution check was originally mailed, during which period such amount may be claimed by such

Restitution Eligible Consumer upon appropriate proof of identity.

34.    After completing the Redress Plan, if the amount of redress provided to Restitution Eligible Consumers is less than $743,000, within 30 days of the completion of the Redress Plan, EOS must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the difference between the amount of redress provided to Restitution Eligible Consumers and $743,000.

35.    If the Bureau determines, in its sole discretion, that additional redress to Restitution Eligible Consumers is wholly or partially impracticable or otherwise inappropriate, any funds not used for such equitable relief will be deposited in the U.S. Treasury as disgorgement. EOS will have no right to challenge any actions that the Bureau or its representatives may take under this paragraph.

36.    EOS may not condition the payment of any redress to any Restitution Eligible Consumer under this Order on that consumer waiving any right.

37.    Within 90 days of completing the Redress Plan, EOS will submit to the Enforcement Director for review a report detailing how it identified accounts for redress and paid redress on those identified accounts.

## V.
## ORDER TO PAY CIVIL MONEY PENALTIES

**IT IS FURTHER ORDERED** that,

38.    By reason of the violations of law alleged in the complaint, and based on the factors set forth in § 1055(c)(3) of the CFPA, 12 U.S.C. § 5565(c)(3), a judgment for a civil money penalty is hereby entered in favor of the Bureau and against EOS in the amount of $1,850,000.

39.    Within 30 days of the Effective Date, EOS must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

40.    The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by § 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

41.    EOS must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, EOS may not:

> a.    claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or
>
> b.    seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to

payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

42.     To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, EOS may not argue that it is entitled to, nor may EOS benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action (Penalty Offset). If the court in any Related Consumer Action grants such a Penalty Offset, EOS must, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VI.
## ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

43.     In the event of any default on EOS's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

44.     EOS must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to EOS.

45.     Under 31 U.S.C. § 7701, EOS, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

46.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, EOS must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that EOS paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

## VII.
## REPORTING REQUIREMENTS

**IT IS FURTHER ORDERED** that,

47.     For 5 years from the Effective Date, EOS must notify the Bureau of any development that may affect EOS's compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against EOS; or a change in EOS's name or address. EOS must provide this notice at

least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

48.  Within 7 days of the Effective Date, EOS must designate at least one telephone number and email, physical, and postal address as points of contact, which the Bureau may use to communicate with EOS. EOS must also designate someone, providing a name, email, and physical address, who will accept service of process for EOS.

49.  EOS must report any change in the information required to be submitted under Paragraph 48 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

50.  Within 60 days of receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, and again one year after the Effective Date, EOS must submit to the Enforcement Director an accurate written compliance progress report (Compliance Report) that has been approved by the Board, which, at a minimum:

a.  describes in detail the manner and form in which EOS has complied with this Order; and

b.  attaches a copy of each order acknowledgment obtained under Section VIII, unless previously submitted to the Bureau.

19

51.     After the one-year period, and for 4 years thereafter, EOS must submit to the Enforcement Director additional Compliance Reports within 14 days of receiving a written request from the Bureau.

## VIII.
## ORDER DISTRIBUTION AND ACKNOWLEDGMENT

**IT IS FURTHER ORDERED** that,

52.     Within 30 days of the Effective Date, EOS must deliver a copy of this Order to each of its Board members and executive officers, as well as to any managers, employees, or other agents and representatives who have responsibilities related to the subject matter of the Order.

53.     For 5 years from the Effective Date, EOS must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section VII, any future board members and executive officers, as well as to any managers, employees, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

54.     EOS must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq., within 45 days of delivery, from all persons receiving a copy of this Order under this Section.

20

## IX.
## RECORDKEEPING

**IT IS FURTHER ORDERED** that,

55.     EOS must preserve and create, for at least 5 years from the Effective

Date, the following business records:

      a.     All documents and records necessary to demonstrate full

             compliance with each provision of this Order, as well as all

             submissions to the Bureau.

      b.     All documents and records pertaining to the Redress Plan,

             described in Section IV.

56.     EOS must retain the documents identified in Paragraph 55 for at least 5

years.

57.     EOS must make the documents identified in Paragraph 55 available to

the Bureau upon the Bureau's request.

## X.
## NOTICES

**IT IS FURTHER ORDERED** that,

58.     Unless otherwise directed in writing by the Bureau, EOS must provide

all submissions, requests, communications, or other documents relating to this Order

in writing, with the subject line, "Consumer Financial Protection Bureau v. Collecto,

Inc. d/b/a EOS CCA, Case No. 2013-0829-02," and send them either:

a.   By overnight courier (not the U.S. Postal Service), as follows:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
1625 Eye Street NW
ATTN: Office of Enforcement
Washington, DC 20006; or

b.   By first-class mail to the address in Paragraph 58(a) and

contemporaneously by email to

Enforcement_Compliance@cfpb.gov.

## XI.
## COOPERATION WITH THE BUREAU

**IT IS FURTHER ORDERED** that,

59.     EOS must cooperate fully to help the Bureau determine the identity and

location of, and the amount of injury sustained by, each Restitution Eligible

Consumer. EOS must provide such information in its or its agents' possession or

control within 14 days of receiving a written request from the Bureau.

60.     EOS must cooperate fully with the Bureau in this matter and in any

investigation related to or associated with the conduct described in the Complaint.

EOS must provide truthful and complete information, evidence, and testimony. EOS

must cause EOS's officers, employees, representatives, or agents to appear for

interviews, discovery, hearings, trials, and any other proceedings that the Bureau may

reasonably request upon 14 days written notice, or other reasonable notice, at such

places and times as the Bureau may designate, without the service of compulsory process.

## XII.
## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, to monitor EOS's compliance with this Order,

61.    For 5 years from the Effective Date, within 14 days of receipt of a written request from the Bureau, EOS must submit additional compliance reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

62.    EOS must permit Bureau representatives to interview any employee or other person affiliated with EOS who has agreed to such an interview. The person interviewed may have counsel present.

63.    Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6 or otherwise.

## XIII.
## RELEASE

64.    The Bureau releases and discharges EOS from all potential liability for law violations that the Bureau has or might have asserted based on the practices alleged in the Complaint, to the extent such practices occurred before the Effective Date of this Order and the Bureau knows about them as of the Effective Date of this Order. Notwithstanding this release, the Bureau may use the practices alleged in the

23

Complaint in future enforcement actions against EOS or its affiliates to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with the Order, or to seek penalties for any violations of the Order.

## XIV.
## RETENTION OF JURISDICTION

65.     The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.


**IT IS SO ORDERED.**

DATED this 8th day of December, 2015.

United States District Court Judge